UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON SIGERS,                                    Case No. 08-13298

        Plaintiff,                            Patrick J. Duggan
v.                                             United States District Judge

C/O BAILEY, et al.,                      Michael Hluchaniuk
                                                        United States District Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANTS' MOTION TO DISMISS (Dkt. 44)

**I.    PROCEDURAL HISTORY**

Plaintiff filed his original complaint in this case on July 31, 2008. (Dkt. 1). The complaint related to medical treatment plaintiff had received while incarcerated by the State of Michigan and named the Michigan Department of Corrections as the defendant. The Michigan Department of Corrections filed a motion to dismiss on October 3, 2008. (Dkt. 9). Prior to a decision on the motion to dismiss, plaintiff filed a motion to amend the complaint. (Dkt. 13). The motion to amend was granted in part and denied in part on October 31, 2008. (Dkt. 17). The motion to dismiss filed by the Michigan Department of Corrections was denied as being moot because plaintiff's amended complaint did not name them as a defendant. (Dkt. 23).

In plaintiff's amended complaint, he alleges that he was assaulted by two other prisoners on April 29, 2005, while he was housed at the Pine River Correctional Facility (SPR). (Dkt. 24, ¶ 11). Due to his injuries, plaintiff subsequently had ankle surgery. According to plaintiff's amended complaint, approximately six weeks after his surgery (which was in April 2005), he was taken to Duane Waters Health Center where defendant Mirsha removed the screws in his ankle without x-rays and returned plaintiff to the Cooper Street Correctional Facility (JCS). When plaintiff was seen by defendant Daoust at JCS, he explained that his leg/ankle did not feel right, he could not walk without pain, he needed a wheelchair or crutches, and he needed to have his meals in his cell. According to the amended complaint, plaintiff was told, apparently by defendant Daoust, that he should walk on his leg so that it would heal and he also claims that defendant Daoust provided no special accommodations. (Dkt. 24, p. 5). Plaintiff alleges that defendant Daoust violated his Eighth Amendment rights by failing and refusing to continue to provide plaintiff with sufficient pain medication and special accommodations, as required by doctor orders. Defendant Daoust also allegedly violated plaintiff's Eighth Amendment rights by ignoring plaintiff's complaints of pain, swelling, and inability to walk by not promptly taking x-rays or adequately following up, knowing that plaintiff had undergone a highly intrusive second surgery with the re-insertion of metal screws. (Dkt. 24, p. 8).

With respect to defendant CMS, plaintiff claims that his Eighth Amendment rights were violated by CMS's "custom and policy of cutting costs and delaying treatment through time-consuming administrative oversight and approval only as a concern for saving costs and profit for their required contractual medical services." (Dkt. 24, p. 9). Plaintiff further alleges that defendants knew or should have known that plaintiff's medical condition was serious and that he faced a substantial risk or harm or injury from defendants' disregard of that risk and their failing to take reasonable steps to prevent or minimize injury. (Dkt. 24, p. 9).

On March 26, 2009, defendants CMS and Daoust filed a motion to dismiss the claims asserted against them, based in part on plaintiff's failure to exhaust administrative remedies and plaintiff's failure to state a claim against CMS. (Dkt. 44). Plaintiff filed a response to the motion to dismiss on April 22, 2009. (Dkt. 46). Defendants filed a reply on June 2, 2009. (Dkt. 48). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motion to dismiss plaintiff's claims against them.

## II. APPLICABLE GRIEVANCE PROCEDURE

Defendants produced a copy of the MDOC policy directive that was effective as of March 5, 2007. (Dkt. 44-6). However, the grievance policy directive that governs plaintiff's claims against defendant Daoust is an earlier

version. *See e.g. Rusiecki v. Trombley*, 2008 WL 192284, *4 n. 2 (E.D. Mich. 2008) (12/19/03 MDOC Policy Directive 03.02.130 in effect until superseded on 3/5/07). The correct MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." *Binion v. Glover*, 2008 WL 4155355, *3 (E.D. Mich. 2008). The grievance procedure also requires that the information provided "shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." *Binion*, at *3. Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly. *Id*.

Within five days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility. *Binion*, at *3. And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather any additional information needed to respond to the grievance." *Binion*, at *3. If the grievant is not interviewed, the reason must be included in the written response to the grievance. *Binion*, at *3. In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved.

*Binion*, at *3. At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted" and that the response was reviewed by the appropriate supervisor. *Binion*, at *3.

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. *Binion*, at *3. If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. *Binion*, at *3. For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id*. Or, if a prisoner is housed in a CFA or SAI facility, the Warden or Deputy Warden is the appropriate respondent. *Id*. The Grievance Coordinator shall then ensure that "any additional investigation was completed as necessary for each Step II grievance accepted...." *Binion*, at *3.

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Prisoner Affairs Section. *Binion*, at *3. The Prisoner Affairs Section is the respondent for a Step III grievance on behalf of the MDOC Director. *Binion*, at *3. If a Step III grievance involves medical care or treatment, the Prison Affairs Section must forward any such grievance to the Bureau of Health Care

Services (BHCS), who shall ensure that the grievance is investigated and a timely response provided. *Id.* The Manager of the Prisoner Affairs Section shall ensure that any additional investigation is completed as necessary for Step III. *Id.*

## IV. ANALYSIS AND CONCLUSIONS

### A. Standards of Review

#### 1. Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit

observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading

standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

    2.  Summary Judgment

Rule 12(d) also provides that, if the moving party presents and the Court relies on matters *outside* the pleadings, "the motion [under Rule 12(b)(6)] must be treated as one for summary judgment and disposed of as provided in Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Thus, the plain language of the rule requires that if the motion relies on outside materials that the Court considers, then the motion "must" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). With respect to defendant's argument that plaintiff failed to exhaust his administrative remedies, the parties submitted, and the undersigned has considered, evidence that is outside the pleadings. Thus, in this respect, the Court will treat defendant Daoust's motion to dismiss as one for summary judgment under Rule 56.

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-

79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

  B. <u>Exhaustion of Administrative Remedies</u>

    1. Legal standards

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id*. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative

defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

        2.       Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 2387, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an

effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.").

12

Report and Recommendation
Motion to Dismiss
*Sigers v. Bailey*; 08-13298

3. Plaintiff failed to exhaust his administrative remedies against defendant Daoust.

Defendants supplied copies of all the materials relating to any grievances submitted by plaintiff from December 27, 2005 through June 23, 2008. (Dkt. 44-5). These grievances were filed at a variety of facilities at which plaintiff was housed in this time frame, including the Pine River Correctional Facility (SPR), the Cooper Street Correctional Facility (JCS), the Parr Highway Correctional Facility (ATF), the G. Robert Cotton Correctional Facility (JCF), and the Egeler Correctional Facility (SMN). (Dkt. 44-5). Defendant Daoust was employed at the Cooper Street Correctional Facility (JCS) and this is the facility at which she is alleged to have been deliberately indifferent to plaintiff's serious medical needs. Thus, for purposes of examining whether plaintiff exhausted his administrative remedies as to defendant Daoust, only those grievances relating to occurrences at JCS are relevant.

Defendants provided a copy of a Step I grievance from JCS dated September 8, 2006 relating to plaintiff's complaints about handicapped accessibility issues. (Dkt. 44-5, p. 10). This grievance is not numbered and no further information about how it was handled by the MDOC is provided. This grievance, on its face, has nothing whatsoever to do with any medical care issues and thus, is not pertinent to the present exhaustion inquiry.

In Grievance No. SPR051100599121, dated November 11, 2005, appears to have been initially filed at JCS, but was transferred to the Pine River Facility because the events complained about occurred there. (Dkt. 44-5, p. 11). Plaintiff wrote on this grievance:

> Because Pine River Facility waited 14 days to send me to the Hospital to get my leg fixed when I got there they told me they waited to long to have surgery on it I will have problems with it and I do now. It is 11/01/05 and it is still messed up and did not heal right because there poor medical people. It is unfair to me. Now I have to suffer and it was not my fault at all. JCS told me that the matter was to be dealt with you.

(Dkt. 44-5, p. 11). This grievance does not appear to have anything whatsoever to do with any medical care provided by defendant Daoust or any medical care provided at the JCS facility and thus, is also not relevant to the present exhaustion inquiry.

Grievance No. JCS06080069812F3 was filed by plaintiff on September 19, 2006 and relates to an incident on August 28, 2006. (Dkt. 44-5, p. 15). Plaintiff complains in this grievance about his medication being crushed and about being unable to identify whether he was taking the correct medication. This grievance appears totally unrelated to the allegations in plaintiff's complaint about defendant Daoust, which occurred approximately six weeks after his April 2005 surgery. (Dkt. 24, p. 5). Nothing in the complaint suggests that defendant Daoust is one of

the medical personnel about which plaintiff complains in his September 19, 2006 grievance. Further, plaintiff's complaint does not contain any allegations about his medication being improperly crushed. Thus, this grievance is not relevant to the present exhaustion inquiry.

Similarly, Grievance No. JCS0608006981283 was submitted on August 22, 2006 regarding an incident that occurred on August 22, 2006 complaining about the crushing of plaintiff's pills and his inability to determine whether he was being given the correct medication. (Dkt. 44-5-, p. 14). Like the last grievance, this grievance appears totally unrelated to the allegations in plaintiff's complaint about defendant Daoust, which occurred approximately six weeks after his April 2005 surgery. (Dkt. 24, p. 5). Again, plaintiff's complaint does not contain any allegations about his medication being improperly crushed. Thus, this grievance is not relevant to the present exhaustion inquiry.

No other grievances relating to any medical care or other incidents at JCS were provided by defendants. Plaintiff did not provide any additional or different grievance materials in his response to the motion to dismiss. (Dkt. 46). The undersigned suggests that nothing in the grievances filed by plaintiff at JCS could have given the MDOC or defendant Daoust reasonable notice that defendant Daoust was being grieved for any medical care that she provided at any time to plaintiff while he was in custody at JCS. Thus, plaintiff has not exhausted his

administrative remedies against defendant Daoust and his claims against her should be dismissed with prejudice.

  C. <u>Plaintiff Fails to State a Claim Against CMS</u>

  In order to state a cause of action under 42 U.S.C. § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). If either element is missing, then a claim under § 1983 has not been stated. *Christy v. Bandlett*, 932 F.2d 502, 504 (6th Cir. 1991). In the present motion, there is no challenge to the claim that defendants were acting under color of state law.

  CMS correctly states that a plaintiff bringing an action pursuant to § 1983 may not base liability on a theory of *respondeat superior* or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*, liability can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, at 694. Moreover, there must be an "affirmative link between the

policy and the particular constitutional violation alleged." *Raub*, at *2, quoting, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "There must be more than merely a right to control employees, as plaintiff must show that CMS at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees." *Moore*, at *4, citing, *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

CMS claims that plaintiff's amended complaint does not identify a specific "policy" instituted by CMS that plaintiff claims violated his constitutional rights. The undersigned agrees that plaintiff's amended complaint is insufficient to state a policy, pattern, or practice claim against CMS. Rather, plaintiff only makes conclusory and vague allegations that his alleged mistreatment was the result of a cost-cutting policy instituted by CMS. Even construing plaintiff's amended complaint indulgently, he has failed to allege that any pattern, policy, or practice of CMS is implicated by his claims. As such, plaintiff's allegations against CMS, at best, merely "create speculation" or a "suspicion" of a legally cognizable claim and his claims against CMS should be dismissed. *See, Bredesen* and *Twombley, supra*.

Given the conclusions reached above, the undersigned suggests that it is unnecessary to reach the other grounds on which defendants have moved to dismiss the complaint.

V. **RECOMMENDATION**

Based on the foregoing, the undersigned **RECOMMENDS** that plaintiff's claims against defendants CMS and Daoust be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  | s/Michael Hluchaniuk |
|---|---|
| Date: December 9, 2009 | Michael Hluchaniuk |
|  | United States Magistrate Judge |

## CERTIFICATE OF SERVICE

I certify that on December 9, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system ,which will send electronic notification to the following: Randall A. Juip, Anthony D. Pignotti, Brian J. Richtarcik, Loretta B. Subhi, and John L. Thurber, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Jason Sigers, 805 Roberts St., Jackson, MI 49203.

s/Tammy Hallwood
Tammy Hallwood
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7887
tammy_hallwood@mied.uscourts.gov